FILED

July 21 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0507

DA 14-0507

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 205N

IN RE THE MARRIAGE OF:

MINDY BARTON,

      Petitioner and Appellee,

    v.

JOHN BARTON,

      Respondent and Appellant.

APPEAL FROM:    District Court of the Eleventh Judicial District,
                In and For the County of Flathead, Cause No. DR-13-426B
                Honorable Robert B Allison, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          John Barton (self-represented); Fort Worth, Texas

      For Appellee:

          Tiffany B. Lonnevik, Lonnevik Law Firm; Kalispell, Montana

Submitted on Briefs:  May 13, 2015
             Decided:  July 21, 2015

Filed:

                                  Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 John Barton appeals from the Eleventh Judicial District Court's decree of dissolution. We affirm.

¶3 We restate the issues on appeal as:

1. *Was the District Court's division of the marital assets an abuse of discretion?*

2. *Was the District Court's determination of the amount of maintenance an abuse of discretion?*

3. *Did the District Court abuse its discretion when it required John to pay some of his attorney fees?*

4. *Was the District Court's determination of the respective obligations of the parties for the children's financial support an abuse of discretion?*

¶4 John and Mindy were married in 2000 in Texas. John was 30, and Mindy was 21. Over the course of the marriage they had four children who, at the time of trial, were ages 3, 7, 9, and 13. John and Mindy coparented the children.

¶5 John's total earnings from the ten years prior to the marriage were $4,567. Over the thirteen years of the marriage, John engaged in various short-term business and professional ventures, earning $85,525. While married, John obtained an associate's degree in business financing, a bachelor's degree in business science, and a master's

2

degree in business administration, as well as certification in Rolfing (an alternative health treatment technique).

¶6 Mindy comes from a wealthy Texas oil family and was the beneficiary of three trust accounts at the time the couple married. At the time of trial, Mindy was the beneficiary of five trusts collectively valued between $5.2 and $6 million. On average, the trusts distributed $345,000 per year in the six years preceding the divorce. Of that amount, $167,217 per year was used for living expenses. Some portion of the distributions was used to pay for John's education, a failed small business venture, and John's brief venture into day-trading.

¶7 Mindy petitioned for dissolution in June 2013. Prior to filing the petition, Mindy paid down John's credit card debt to $1,200. By the time of trial, approximately ten months later, John's credit card debt was approximately $45,000. After the petition was filed, John requested and received temporary support and opened a Rolfing business with financial assistance from Mindy. Between the petition being filed and the trial, John deposited approximately $25,000 in his bank accounts—though the source of these funds is unclear.

¶8 At trial, John testified that he believed he should receive $7,000 a month in maintenance for as many years as the couple was married. John's expert testified that John required approximately $4,000 a month in maintenance to meet his expenses, and that six years would be an appropriate length of time for maintenance. The District Court awarded John $4,000 a month for four years to be followed by $2,000 a month for another four years.

¶9 At trial, when asked if his position was that he was entitled to any portion of the trusts, John testified: "Oh, I don't think I'm entitled to anything, I think that's the Court's discretion in this hearing to decide." No evidence was presented that John made any contributions to the value of the trusts. The District Court determined that John would not receive any portion of the trusts, but would be paid maintenance from trust distributions.

¶10 The child support calculation worksheet showed that John should pay Mindy $1,666 a month in child support. Mindy waived that amount, though, so the District Court did not require John to pay monthly child support. The dissolution decree requires Mindy to pay for health insurance and John to pay 32% of any out-of-pocket medical, dental, optical, pharmacological, or counseling costs incurred on behalf of the children.

¶11 The decree of dissolution awarded John $288,000 in maintenance to be paid over eight years, his Rolfing business, one of the couple's two vehicles, half of the couple's $20,500 joint tax refund, $22,600 in attorney fees, and a cash equalization payment of $61,533, representing half the value of the equity in the marital home and personal property. The decree waived John's $1,666-per-month child support obligation. John was assigned the debt on the vehicle he purchased after the dissolution petition was filed and the debt on his credit cards. John appeals the decree of dissolution.

¶12 Section 40-4-202, MCA, governs the distribution of a marital estate and vests a district court with broad discretion to apportion the marital estate in a manner equitable to each party under the circumstances. *In re Marriage of Bartsch*, 2007 MT 136, ¶ 9, 337 Mont. 386, 162 P.3d 72. We initially review a district court's division of marital

4

property and maintenance awards to determine whether the findings of fact upon which the division is based are clearly erroneous. *In re Marriage of Swanson*, 2004 MT 124, ¶ 12, 321 Mont. 250, 90 P.3d 418. Absent clearly erroneous findings, we will affirm a district court's division of property and award of maintenance unless we identify an abuse of discretion. *In re Marriage of Rudolf*, 2007 MT 178, ¶ 15, 338 Mont. 226, 164 P.3d 907. In a dissolution proceeding, the test for an abuse of discretion is whether the district court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in a substantial injustice. *In re Rudolph*, ¶ 15.

¶13 *1. Was the District Court's division of the marital assets an abuse of discretion?*

¶14 John argues that the District Court improperly valued the marital residence and various personal property. However, John either presented no evidence of the proper value of the disputed properties, or he presented vague evidence that the District Court rejected. In some instances, the District Court adopted John's vague testimony about the value of personal property and awarded him a cash equalization payment of half the value John testified the property was worth. John has not demonstrated that any of the District Court's findings of fact on the value of property were clearly erroneous.

¶15 John also speculates on appeal that the trusts are worth more or there are more trusts than Mindy disclosed. He presented no evidence to that effect at trial, however, and he neither objected to Mindy's evidence of the value of the trusts nor did he impeach it. Since John has not demonstrated that any of the District Court's findings of fact were clearly erroneous, we address whether the property division was an abuse of discretion. *In re Rudolph*, ¶ 15.

¶16    John argues that the District Court should have awarded him a portion of the trusts' value. We note, however, that Mindy acquired three of the trusts before the marriage, the remaining two were created with funds from those three trusts when they expired, and all the money in the trusts was inherited before the marriage. The trusts thus fall under the portion of § 40-4-202, MCA, which provides:

> In dividing property acquired prior to the marriage; . . . [and] the increased value of property acquired prior to marriage; . . . the court shall consider those contributions of the other spouse to the marriage, including:
> (a) the nonmonetary contribution of a homemaker;
> (b) the extent to which such contributions have facilitated the maintenance of this property; and
> (c) whether or not the property division serves as an alternative to maintenance arrangements.

Although the court must consider the statutory factors when dividing property acquired before the marriage, the factors do not prevent the court from exercising its discretion in dividing such property. *In re Funk*, 2012 MT 14, ¶ 19, 363 Mont. 352, 270 P.3d 39.

¶17    In considering the statutory factors, the District Court found that Mindy contributed disproportionally to the marriage because her trust funds were used to buy or service debt on almost every asset acquired during the marriage—meaning that John's total income of approximately $85,000 over the course of the marriage did not contribute in any meaningful way to preservation of the trusts' assets. The District Court also found that, while John made non-monetary contributions to the family in the form of childcare and homemaking, his contributions did not exceed Mindy's. We further note that those contributions did not facilitate the maintenance of the trusts, either directly or indirectly. The District Court also found that Mindy was willing to pay maintenance to John in lieu

6

of an award of some portion of the trusts. John has not demonstrated that any of the District Court's findings were clearly erroneous, nor has he made any persuasive argument that awarding the trusts to Mindy was an abuse of discretion.

¶18 *2. Was the District Court's determination of the amount of maintenance an abuse of discretion?*

¶19 John argues that he should have received $7,000 a month in maintenance for ten years. This amount represents John's projected monthly cost of living. Although it is not clear how John arrived at the ten-year duration, he argues that it was an abuse of discretion for the District Court to award him less.

¶20 Generally, maintenance is not favored. *In re Marriage of Crilly*, 2009 MT 187, ¶ 10, 351 Mont. 71, 209 P.3d 249. Maintenance is appropriate when a spouse has insufficient assets to cover living expenses and reasonably cannot earn a sufficient amount to maintain an appropriate standard of living. *In re Marriage of Crilly*, ¶ 10; Section 40-4-203, MCA.

¶21 The District Court's determination of maintenance was based on John's testimony and his expert's testimony that John's projected expenses, minus his projected income, amounted to a deficit of approximately $4,000 per month. Both John and his expert testified that John's expenses would be approximately $6,500 per month and that he would earn on average approximately $2,500 per month, leaving a deficit of $4,000 per month. The District Court concluded that $4,000 per month for four years would give John time to grow his Rolfing business and become fully self-supporting, and that $2,000

7

per month for the following four years would allow John to further enhance his business and earn money toward retirement.

¶22 We further note that John has a marketable master's degree in business administration, an ostensibly profitable Rolfing practice, and his $1,666 per month child support obligation was waived pursuant to Mindy's stipulation. Although the entirety of his $45,000 in credit card debt was assigned to him in the decree, according to John's testimony at least $10,000 of that debt is attorney fees, for which Mindy was required to reimburse him. The District Court imposed that debt on John because it found that he incurred it as a result of profligate spending after the separation. We find no abuse of discretion in the District Court's award of $288,000 in maintenance over eight years, or in its refusal to award John the entire amount of his monthly expenses for ten years.

¶23 *3. Did the District Court abuse its discretion when it required John to pay some of his attorney fees?*

¶24 Pursuant to § 40-4-110, MCA, a district court "may order a party to pay a reasonable amount for the costs to the other party of maintaining or defending any proceeding under chapters 1 and 4." An award of attorney fees under § 40-4-110, MCA, must be reasonable, based on necessity, and rooted in competent evidence. *In re Marriage of Barnard*, 241 Mont. 147, 154, 785 P.2d 1387, 1391 (1990). We review a district court's award of attorney fees in a dissolution action for abuse of discretion. *In re Marriage of Dennison*, 2006 MT 56, ¶ 23, 331 Mont. 315, 132 P.3d 535. This Court will not disturb an award of fees if it is supported by substantial evidence. *Weibert v. Weibert*, 2015 MT 29, ¶ 10, 378 Mont. 135, 343 P.3d 563.

¶25 According to John's testimony at trial, his legal fees totaled $27,600 for two attorneys. The District Court ordered Mindy to pay $22,600 of that amount. John was ordered to pay $5,000. John is required to pay less than one fifth of his attorney fees. John argues that the District Court should have awarded him all of his attorney fees.

¶26 Considering John has an income of approximately $6,500 per month and his only financial obligation to his children is for 32% of out-of-pocket medical costs, $5,000 is not an onerous financial obligation. The District Court's determination was based on substantial evidence in the form of John's own testimony regarding his finances and his attorney fees. John has not directed our attention to any evidence in the record that he would not be able to pay that amount. *See In re Marriage of Barnard*, 241 Mont. at 154, 785 P.2d at 1391 (an award of attorney fees under § 40-4-110, MCA, must be based on necessity). John has not demonstrated any abuse of discretion in the District Court's partial award of attorney fees.

¶27 *4. Was the District Court's determination of the respective obligations of the parties for the children's financial support an abuse of discretion?*

¶28 The child support guidelines determined that John should pay Mindy $1,666 for financial support of their four children because the children would reside primarily with Mindy. Mindy waived that amount, but the District Court still required John to pay 32% of any out-of-pocket medical expenses. Mindy's trust money pays for health insurance for all of the children, and John is not required to reimburse her for any portion of the premiums. In light of John's relief from the obligation of paying $1,666 per month in child support and Mindy's obligation to provide health insurance, we do not see any

9

abuse of discretion in requiring him to pay approximately one third of out-of-pocket medical expenses.

¶29 John also raises the anomalous argument that while Mindy waived child support, John did not. John seems to believe that both parents owe child support obligations to each other. In fact, the child support calculations showed that only John had an obligation to Mindy because she was the primary residential parent and thus would incur most of the financial burden of providing for the children. Mindy had no obligation to pay any child support to John, thus there was nothing for him to waive.

¶30 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents questions controlled by settled law and by the clear application of applicable standards of review. The District Court did not abuse its discretion in any of its determinations of the divisions of property or the respective financial obligations of the parties. Affirmed.


/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ BETH BAKER
/S/ LAURIE McKINNON